Case number 14-1070, Gregory Bartko, Petitioner v. Securities and Exchange Commission. Mr. Masui for the amicus curiae, Mr. Metro for the respondent. Let's wait until the courtroom is clear. Mr. Matsui, good morning. May it please the court, Brian Matsui on behalf of the court-appointed amicus. The commission's sanction order should be vacated for two reasons. First, the commission impermissibly applied Dodd-Frank's new penalties retroactively to Mr. Bartko. It sanctioned Mr. Bartko in a way that it could not have done at the time of the misconduct, and it did so based solely on past misconduct. Second, contrary to the SEC's position here, the commission is not immune from basic fundamental principles of equity. It cannot, as it did here, simply say that unclean hands does not apply. The commission order should be vacated so Mr. Bartko has the ability to try to prove his unclean hands defense in the first instance. Now, as to retroactivity, the SEC now acknowledges that its sanction order must be vacated, at least with respect to municipal advisors and rating organizations, because those penalties did not exist at the time the misconduct occurred. They are entirely new under Dodd-Frank. But more of the order also should be vacated. At the time the misconduct occurred, Dodd-Frank only allowed in the broker-dealer sanction to bar Mr. Bartko from the association of broker-dealers. It did not – Can you spell out for us exactly how Mr. Bartko is harmed by the collapse proceeding? Yes, Your Honor. Well, under this Court's prior decision in Teasure, there was required to be an industry-specific nexus in order to – Now, what do you understand that nexus to consist of? In order to be barred, for example, with respect to investment advisors, Mr. Bartko needed to be associated with an investment advisor at the time of the misconduct. And that's all? That's the only additional factual predicate beyond what went into the conviction? Yes, Your Honor. That's an additional element that was required, which Dodd-Frank removed. Okay. So it is correct to say that the effect of Dodd-Frank here is that people barred from a certain set of financial firms now cannot go under the radar and associate with a different type because the Commission can bar him from association with a different type even before he starts to associate. That's correct, Your Honor. So what he's deprived of is an opportunity to sneak under the radar. There's no additional fact other than that that has to be shown, right? Yes, Your Honor, but that's a critical element of the sanction, that you need to have that association. And that's why this Court – Well, you say it's critical, but what interest of his is protected by that? An interest in being associated with a set of firms with which he knows and the SEC knows that as soon as they notice it, he can be stopped from associating with them. Well, first of all, Your Honor, if we could just take a step back on this. This Court has recognized that these types of sanctions in the securities industry are the equivalent of capital punishment. And so this is not just simply – Well, it's capital punishment for a many-headed beast. Yes, Your Honor. And under the pre-Dodd-Frank world, Mr. Barco could have only been prevented from associating with broker-dealers. But now, to answer your point more specifically, it does make a very big difference in this case. Currently, Mr. Barco cannot seek any association with any other sort of area in the industry field. He cannot seek association with investment advisors. It would be unlawful for him to do so, given the existence of the order. Before Dodd-Frank, he could actually seek associations, and it would not be unlawful. It would not be unlawful, but as soon as the SEC noticed, it could – if noticed to him, there would be no new factual predicates to be established and bar him. I would disagree with that, Your Honor, in one respect. Well, at least in one respect, Your Honor. If Mr. Barco, two years from now, under the pre-Dodd-Frank world, decided to associate with investment advisors, he could do so, and that would not be a violation of the sanction order. So it would not be unlawful. It would not subject him to monetary fines pre-Dodd-Frank. It will post-Dodd-Frank. In addition, the SEC would have to conduct a public interest analysis at that point to determine whether or not he should be sanctioned. That's a different analysis, perhaps two years from now, as it is today. And in that case, it's like the St. Cyr case, where what was removed was the ability to have a discretion to prevent removability. Let me make sure I understand. Is your point that under the old regime, even though the commission could move against him, he would have perhaps a defense, whereas under the new regime, he doesn't? Yes. Might he win if the commission moves against him under the old regime? Might he have a defense and prevail, whereas under the new regime, he doesn't get an opportunity to contest that? That's correct, Your Honor. If we just take a look at this, under the old regime, the SEC tried to sanction him under the Advisors Act, which would have been capable of barring him from investment advisors. The ALJ determined that was sufficient, but the commission reversed it. It found a failure of proof. But now post-Dodd-Frank, just because— They don't need to make any evidentiary showing. They can just bar him totally, right? Exactly, Your Honor. So they have the categorical right to bar him across the entire industry. And under decisions like Landgraf, that's an additional disability that's being imposed upon an individual after post-Dodd-Frank. So what does the public interest analysis entail, and on whom is the burden of proof? And does that shift? The burden would be on the SEC to show that it's in the public interest to bar him. Under the post-Dodd-Frank world, if Mr. Barco was trying to get the sanction removed, the burden would be on him to try to show that he should be allowed admission. So that's another situation in which there is an additional burden placed upon Mr. Barco based upon the retroactive application of Dodd-Frank. Well, isn't there another factor, and that is prosecutorial discretion? I mean, if Mr. Barco—and he's in prison for quite a while, isn't he? Yes, Your Honor. All right. And let's say he's rehabilitated, and in 10 years he wants to get back into the field. He shows the SEC that he has been rehabilitated and he has learned his lesson. If we allow this, the Dodd-Frank elimination of the associated with statutory requirement to apply pre-Dodd-Frank, he can't do anything. He's out completely. I'm sorry, Your Honor. If the post-Dodd— I mean, if it's not retroactive. Right. If it's not retroactive and he is released from prison at some point and can show that he rehabilitated himself, then he would be allowed to seek association with an investment advisor, for example, and the SEC, if it decided to, could try to bring a sanction against him, and the public interest determination would occur. And at that point, the SEC may or may not decide that he should be barred. And that would be subject to appellation. In this scenario, the SEC would confront the burden of showing that the public interest requires his being barred? Yes, Your Honor. In the pre-Dodd-Frank world, the SEC would have the burden in that proceeding. Post-Dodd-Frank, it's just a categorical bar. Which he could, by carrying the burden of convincing them that he's reformed, get them to live. Yes, Your Honor, but the burden would be upon him to do that, which under retroactivity principles should be impermissible. What does he have to show to have the bar removed? I mean, even the bar that doesn't have a retroactive problem. I mean, I believe he would have to show that it's in the public interest to remove the bar. Well, I mean, is it in the statute? Is it in the regs? Do we know? I'm not entirely certain of what all the factors would be. I know what the factors would be. Is it possible? I mean, have bars been lifted? Yes, Your Honor. I believe that bars have been lifted in the past. Okay. Unless there are further questions, Your Honor, I'd like to reserve the balance of my time. All right. Thank you. Mr. Matro? May it please the Court, Daniel Matro for the Securities and Exchange Commission. I'll begin with the retroactivity issue. We believe that this Court's decision in Coach essentially forecloses the argument presented by Amicus.  The petitioner there challenged the entire collateral bar, but the Court vacated only the two new bars, the two post-Dodd-Frank bars. But the petitioner there only raised this specific issue in the reply brief, and that wasn't before the Court then? It's true, Your Honor, that the issue was clarified in the reply brief. The opening brief challenged the entire bar on retroactivity grounds. But it didn't parse it the way we are now in the opening brief? It wasn't that careful, Your Honor? Perhaps not in the opening brief, but the Commission's brief talked about the two ways in which the two effects that Dodd-Frank had, the addition of the two new bars and the fact that the Commission, with respect to the remaining bars, no longer had to wait until someone associated with those industries in order to impose a bar. And then the petitioner clarified in the reply brief, rejected the characterization that he was simply objecting to a bare change from multiple to single proceedings and said no. The problem he objected to was that before Dodd-Frank, there would be a new hearing with new findings. Exactly the argument that the petitioner presents here, and the Court didn't find that persuasive. The Court, in a footnote, upheld the rest of the bar. No other basis for how that could be other than that it found that that change was a change in procedure that regulated secondary conduct. Do you have Coke in front of you? I have it. Could you turn to 158? Next to the last paragraph. This holding does not apply to the other securities industries with which Coke may not associate. Now, I suppose it's possible to read that it's upholding the application to all four of the others, but how is it possible to give that reading when on 152 we specifically say that his third argument is that he contends the commission's order barring him only from associating with, in other words, the two new ones, the municipal advisors or rating organizations. Nothing about the two fields with which he's not associated, but that he is still barred from. I think if I understand the question, the... vacate the bar, but the two fields that he was not either in or seeking to be associated with. I think it's because he's... And he may have raised it, you know, but we have to look at what we said. Yeah, and I think if you look at footnote three, he specifically raised the issue and the Court in footnotes... Footnote three talks about the procedure of going from separate proceedings to an omnibus proceeding. Yes, and the reason he objected to that, Your Honor, I think was because he no longer had access to a new hearing, new findings that would occur when he chose to associate with those other industries. And this Court said that that change in procedure doesn't give rise to any retroactivity concerns, and it upheld the remaining bar. Mr. Coach was not a transfer agent. He was not a municipal securities dealer. He was not a broker-dealer, and yet the Court didn't vacate those bars. And I think the reasoning, whether or not it expressly applies, and I think it does, is clear that even before Dodd-Frank, the Commission would have had authority to bar Mr. Barco as soon as he tried to associate with any area of the securities industry. Dodd-Frank simply allows the Commission now to bar him from all of them without having to wait until he tries to associate. And I think that's correct. Coach correctly held that that's a procedural change that regulates secondary conduct because as a common-sense functional matter, which is how the Supreme Court says we're supposed to look at the retroactivity analysis, Mr. Barco could not reasonably expect upon his conviction to be able to freely associate in the securities industry without triggering a proceeding that would look basically the same as the one... Well, wouldn't it? And that's, I guess, the critical question, how similar it would look. And the extent that the burden of proof is shifted, if that's the case, do you contest that? I think the question at any point would be what's in the public interest. Yeah, but that's rather vague, and where the burden lies is very important. So before Dodd-Frank, there's no reason to believe that the public interest analysis would have changed in any material respect while Mr. Barco is serving his 23-year sentence. So there's no reason to think that Barco was harmed by the fact that he no longer has that second hearing, that the process has moved to the outset. I don't want to get into peculiarity of this case, but unless you're making a standing argument, I don't think that gets us anywhere. I mean, I think... We're talking about the principle of the difference between Dodd-Frank and Barco, and these two things seem to be involved. They both relate to the association with this different class of financial burden, right, which is not a prerequisite pre-Dodd-Frank. And then arguably, I'm not sure if you're contesting it, arguably, whether the burden is on the SEC to show that it's in the public interest to bar him or the burden is on him to show that he ought not to be barred. Well, I think post-Dodd-Frank, if he feels like the public interest analysis has changed due to the passage of time or when he is released from prison, he does have the ability to request that the commission lift the bar on the commission. Does that mean you're agreeing with me on the burden? Agreeing with perhaps my question, I honestly don't know. I mean, the commission has lifted bars. Yes. And the analysis they go through is whether the public interest warrants lifting the bar. And admittedly, it's a high... Well, I think it is a compelling, it requires some compelling evidence that the public interest analysis has changed, that the commission doesn't regularly lift bars because we're talking about the public interest here. And I think ultimately the same situation would be in place before Dodd-Frank. Is it fair to say that in the post-Dodd-Frank world, as seen by the commission, as soon as you have misbehavior with respect to one class of financial firms, the whole nine yards fall? I think with respect to a conviction like this, yes, that someone who is in Mr. Barco's position could not expect a different result while he's serving his prison sentence or due to the passage of time or anything. The commission would likely, there would have been before Dodd-Frank a new proceeding, but the only question really would have been the question of association with a new industry. But all of the strong public interest factors that the commission considered here would still be in place. And Mr. Barco hasn't, and amicus, haven't given any reason to think that the analysis would change based on the type of industry he's seeking to associate with or the passage of time. But what might change is what's happened to him. Or let's say he's seeking to be in one of the fields as under tight control, as an assistant, just like if a lawyer is disbarred and he says, well, can I be a paralegal? Can I work in a lawyer's office? You don't allow for that possibility. Well, I think even now if he can come back to the commission and ask to be, to ask the commission to take that into account, but I think in practice the commission is likely to consider long periods of compliance in a regulated industry. Fine, but at least he has a chance. He has no chance now. And he did before. I mean, that's what we're talking about is retroactivity, something that he had before he no longer has if we find this, if we uphold these plans. I think he still has a chance to ask that the commission lift the bar and argue that the public interest analysis has changed before. I think he also would have had a very difficult time arguing that he was entitled to participate in any other area of the industry. The effect on him was essentially, as a functional matter, was simply to change when the formal bar came down. But he, you know, it was not as if he was free before Dodd-Frank to participate in these areas of the industry, given his conviction and the public interest considerations. Let me ask you this case. In the now consolidated type of imposition of broad bars, does the imposing the bar on, with respect to the class of financial firms that there's been no association with, does the commission perceive itself as having to establish anything besides what it established with regard to the misbehavior in the firms that he was associated with? Is there really any, in the post-Dodd-Frank world, is there really any mental process that goes on in creating a broad bar as opposed to a narrow bar? Well, I think all of the same public interest considerations would be taken into it. Once the commission has arrived at it, with the class of firms that are clearly covered, or would have been covered pre-Dodd-Frank, does it do anything, exercise any thought about the others? Does it check a box? I don't think it just checks a box, but even before Dodd-Frank, many of the same considerations that went into whether the public interest required a broker-dealer bar would have gone into whether the public interest required an advisor's bar, municipal securities dealer bar, and when you have a case like this where Barco was found guilty with overwhelming evidence of orchestrating. We're dealing with an issue of law. It doesn't really depend upon the particular degree of guilt in his case. Well, I guess I'm just using his example to illustrate the point that the same considerations that bear on one bar will bear on another bar, and the commission has to determine whether someone who has displayed the kind of conduct, misconduct that the person has is a risk in different capacities of the securities industry. In this case, that wasn't a difficult call. In other cases, depending on the facts and circumstances, it might be a more difficult call or a closer case. What's the benefit to the SEC in this omnibus proceeding other than efficiency? Well, I think efficiency is certainly one benefit. Another is something that Judge Williams alluded to, which is that it's in a way a prophylactic measure that makes it so that the commission doesn't have to wait until someone has potentially caused harm before it's detected their attempt to associate. And the fact that Dodd-Frank was enacted to increase efficiency and as a prophylactic measure in that respect doesn't make it retroactive. It doesn't mean that it necessarily has a retroactive effect, but those are benefits that it does. All right. Any more questions? All right. Thank you. Does Mr. Matsui have any time left? Why don't you take two minutes? Thank you, Your Honor. I'll just be very quick unless the Court has any additional questions. Before Dodd-Frank, the SEC, as the SEC has acknowledged, had to prove and show that it was in the public interest to keep Mr. Barco out. And now after Dodd-Frank, Mr. Barco, with this collateral bar, must prove that it's in the public interest affirmatively to let him back in. And that's a significant difference. This case is like Landgraf where there are additional penalties that are being applied to past misconduct, which is the epitome of retroactivity. Unless there are any further questions? All right. Mr. Matsui, you are also appointed by the Court to represent Mr. Barco. And thank you for your assistance. Thank you, Your Honor.
judges: Henderson, Griffith, Williams